UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| KATHERINE M. LOPEZ, | No. ED CV 05-843-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on September 9, 2005, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed a Consent to proceed before the undersigned Magistrate Judge on November 30, 2005. Pursuant to the Court's Order, the parties filed a Joint Stipulation on June 7, 2006, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

II.

**BACKGROUND**

Plaintiff was born on September 22, 1964. [See Administrative Record ("AR") at 55.] She attended one year of college, and has past work experience as, among other things, a telemetry technician, secretary, and sales representative. [AR at 20, 61, 65, 71, 401-02.]

On June 17, 2003, plaintiff filed her applications for Disability Insurance Benefits and Supplemental Security Income payments, alleging that she has been unable to work since April 1, 1999, due to fibromyalgia and chronic fatigue. [AR at 55-58, 60, 392-95.] After her applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on March 2, 2005, at which time plaintiff appeared with counsel and testified on her own behalf. A vocational expert also testified. [AR at 398-429.]

On May 18, 2005, the ALJ determined that plaintiff was not disabled. [AR at 19-24.] When the Appeals Council denied review on July 20, 2005 [AR at 10-12, 430], the ALJ's decision became the final decision of the Commissioner.

III.

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court

must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie

case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; <u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d at 1257.

B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

The ALJ first found that plaintiff last met the insured status requirements of the Act through June 30, 2001.[1] [AR at 19.] Applying the five-step sequential evaluation process, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability. [AR at 20.] At steps two and three, the ALJ concluded that plaintiff has a severe impairment consisting of fibromyalgia and cervical strain but that the impairment does not meet or equal any impairment in the Listing. [<u>Id.</u>] At step four, the ALJ concluded that plaintiff has the residual functional capacity ("RFC")[2] to perform light work,[3] and that she is able to perform her past relevant work. [AR at 20, 23.] Accordingly, the ALJ found plaintiff not disabled. [AR at 23-24.]

/
/
/

---

[1]   For Disability Insurance Benefits, this means that plaintiff must establish that she has been continuously disabled since on or before that date. <u>Flaten v. Secretary of Health and Human Services</u>, 44 F.3d 1453, 1458 (9th Cir. 1995).

[2]   Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3]   Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b) and 416.967(b). Specifically, the ALJ concluded that plaintiff is limited only by an inability to "lift and/or carry more than 10 pounds frequently or more than 20 pounds occasionally; sit, stand and/or walk more than 6 hours out of an 8-hour workday; climb stairs, bend, stoop, kneel, crouch or crawl more than occasionally; climb ladders; and work at unprotected heights, around vibrations, or around extreme cold." [AR at 20.]

V.

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ (1) erred in rejecting the assessments of two treating physicians; (2) improperly found that plaintiff can perform the full range of light work without any non-exertional limitations; and (3) improperly rejected plaintiff's credibility. For the reasons explained below, this matter is remanded for further proceedings.

**A.   TREATING PHYSICIANS' OPINIONS**

Plaintiff contends that the ALJ erred in rejecting the residual functional capacity assessments or Dr. Jay Campbell and Dr. Brigid Freyne. Joint Stipulation ("Joint Stip.") at 13. In particular, plaintiff asserts that the ALJ based his RFC assessment on the opinions of Dr. Thomas J. Sabourin and the non-examining state agency physician, and the reasons for rejecting the treating physicians "do not pass legal scrutiny." Id. The Court agrees with plaintiff, in part.

Notes from Dr. Jay Campbell dating back to July, 2000 [AR at 168], show plaintiff's persistent complaints of fatigue and decreased energy. Diagnoses of fibromyalgia and chronic fatigue syndrome appear throughout the record. [See, generally, AR at 130-169.] As argued by plaintiff in the Joint Stipulation, and noted by the ALJ in his opinion, Dr. Campbell found 18 of the 18 "tender points" necessary for a diagnosis of fibromyalgia. [See AR at 21, 152, 161; Joint Stip. at 14.] Other diagnoses were ruled out. [AR at 131.] On a date unknown, Dr. Campbell wrote a letter indicating that plaintiff had been his patient for the past two years, and has been diagnosed with chronic fatigue and fibromyalgia. These disorders cause her to "have difficulty sleeping along with difficulty in completing normal activities of daily living. She is not able to take care of daily household chores, cook for herself, and can be very forgetful at times." He opined that plaintiff's impairments are in the "moderate range," and that she "can have days of normal function, but she can also have days where it is very difficult for her to get out of bed and cook for herself because of the fatigue." He observed that her condition "has stayed the same or even worsened" over the past two years. [AR at 198.]

At their initial meeting in July, 2003, Dr. Lisa F. Brodkin focused on plaintiff's previously diagnosed fibromyalgia and chronic fatigue syndrome (Joint Stip. at 5), and noted that plaintiff had been intolerant of certain anti-depressants to deal with her fibromyalgia. She indicated that plaintiff's pain was "fairly well controlled" at that time. [AR at 363.] Physical therapy was arranged. [AR at 364.] In October, 2003, plaintiff requested to see a rheumatologist. She was advised to continue her physical therapy exercises and declined any analgesic therapy. [AR at 351-53.] In January, 2004, Dr. Brodkin indicated that plaintiff's fibromyalgia "seems to be under stable control." [AR at 331.] It was stable in February, 2004. [AR at 318.] In March, 2004, plaintiff's fibromyalgia was "stable on present medications." [AR at 312.]

A state agency physician concluded on September 10, 2003, that plaintiff was capable of lifting 20 pounds occasionally and 10 pounds frequently; can stand and/or walk for six hours, and sit for six hours, in an eight hour day; can never climb ladders, ropes or scaffolds, and could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. [AR at 290-97.]

On February 24, 2004, Dr. Thomas J. Sabourin, an orthopedic surgeon, conducted an orthopedic consultation of plaintiff. Plaintiff complained of pain in multiple areas. Dr. Sabourin was aware of her previous diagnosis of fibromyalgia. He observed that plaintiff sits and stands with normal posture, her gait was normal, she could perform toe and heel walking within normal limits, she did not need an assistive device to ambulate, and the range of motion of her cervical and lumbar spine was grossly normal. Range of motion of her shoulders, elbows, wrists, hands, fingers, hips, knees, ankles and feet was normal. Plaintiff had normal motor strength throughout the upper and lower extremities. Dr. Sabourin diagnosed plaintiff with cervical strain and sprain syndrome, numbness of the ulnar aspect of the right hand, and chronic pain syndrome. He concluded that the objective examination "is very negative other than the patient's tenderness over the right shoulder and the spinous processes." He opined that plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently, and can stand/walk up to six hours and sit for six hours in an eight hour work day. [AR at 298-302.]

In October, 2004, Dr. Brigid Freyne, a board-certified rheumatologist and internist, evaluated plaintiff, who was feeling "okay" but was experiencing pain and stiffness. Dr. Freyne

6

found that plaintiff had 16 of 18 trigger points. Plaintiff was advised to continue exercising and taking medications. [AR at 373.] In a physical residual functional capacity questionnaire dated February 24, 2005, Dr. Freyne diagnosed plaintiff with fibromyalgia, indicated her prognosis was "good," that she had 18 of 18 fibromyalgia "tender points," and that her impairments can be expected to last at least 12 months. [AR at 383-87.] She opined that plaintiff's pain or other symptoms would frequently be severe enough to interfere with her attention and concentration. Dr. Freyne concluded that plaintiff could sit for 45 minutes at a time before needing to get up, stand 20 minutes at time, sit about four hours total in an eight hour work day with breaks, stand/walk for about two hours, must be able to shift positions at will, would need to take unscheduled breaks during an eight hour work day, could frequently lift and carry ten pounds and less, could never climb ladders, could only rarely climb stairs, would have significant limitations with reaching, handling or fingering, and is likely to have good days and bad days. Dr. Freyne estimated that on average plaintiff is likely to be absent from work as a result of her impairments more than 4 days per month. Dr. Freyne opined that plaintiff's impairments are "reasonably" consistent with the symptoms and functional limitations described in her evaluation. [AR at 383-87.] In response to interrogatories sent to her by the Social Security Administration, Dr. Freyne indicated that plaintiff has widespread arthralgias, myalgias, and poor concentration, and that 14 of 18 tender points are present. It was not Dr. Freyne's opinion that plaintiff cannot work at any job in the United States. She opined that plaintiff's disability began in 1998, and continued through March, 2005, the date of the interrogatories. [AR at 388-91.]

       The ALJ adopted the assessment of the state agency physician, as well as the conclusions of Dr. Sabourin, the consultative examiner. He rejected the opinion of Dr. Jay Campbell that plaintiff cannot perform activities of daily living and that her fibromyalgia has stayed the same or worsened, indicating that these findings were not supported by treatment notes, that Dr. Campbell did not provide a "function-by-function assessment" of her physical limitations, and that plaintiff reported improvement in her symptoms on October 19, 2000. Further, radiology exams in March, 2000, indicated "only mild uncovertebral atrophy and no cervical spinal instability." [AR at 21.] The ALJ also did not fully accept Dr. Freyne's physical residual functional capacity assessment or

responses to interrogatories, concluding that they were not supported by treatment notes. He referred to inconsistencies in the number of tender points for fibromyalgia found by Dr. Freyne, x-rays showing no abnormalities in plaintiff's hands or wrists, and that Dr. Freyne's opinion does not explain the basis for the limitations she placed on plaintiff's abilities. The ALJ also referred to the lack of treatment records from Dr. Freyne refuting Dr. Brodkin's conclusion that plaintiff's fibromyalgia was controlled, and the absence of an indication that Dr. Freyne reviewed earlier records to support her opinion that plaintiff's fibromyalgia had been in existence since 1998. He further noted Dr. Freyne's opinion that plaintiff can frequently lift 10 pounds, occasionally stoop, crouch and squat, had a good prognosis, and that it was not Dr. Freyne's opinion that plaintiff could not perform any jobs in the national economy. [AR at 22.]

Ninth Circuit cases distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining or consultative physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). Lester, 81 F.3d at 830. It is well established in this Circuit that a treating physician's opinion is entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989); Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989); Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830; Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). Where the treating physician's opinion is controverted by the opinion of other physicians of record, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

1    The opinion of an examining physician, in turn, is generally entitled to greater weight than
2    the opinions of a physician who has not examined the claimant. Andrews, 53 F.3d at 1041. But
3    even the opinions of a non-examining, testifying medical advisor "may serve as substantial
4    evidence when they are supported by other evidence in the record and are consistent with it."
5    Morgan v. Commissioner of Social Security Admin., 169 F.3d 595, 600 (9th Cir. 1999) (quoting
6    Andrews, 53 F.3d at 1041). If the opinion of a treating physician is rejected in favor of that of a
7    non-treating physician, and the opinion of the non-treating physician is based upon independent
8    clinical findings, the opinion of the non-treating physician can constitute substantial evidence. It
9    is then for the ALJ to resolve the conflict. Andrews, 53 F.3d at 1041. If, on the other hand, the
10   opinion of the non-treating physician is based upon the same clinical findings considered by the
11   treating physician, the ALJ must cite specific and legitimate reasons for rejecting the treating
12   physician's opinion. Id.

13   The Court concludes that the reasons given by the ALJ to reject the opinions of Dr.
14   Campbell are not specific and legitimate. First, the ALJ's conclusion that Dr. Campbell's opinions
15   are not supported by the treatment notes is not consistent with the evidence. Dr. Campbell's
16   notes show consistent conclusions of fibromyalgia, including a finding of the proper number of
17   trigger points to allow for that opinion. Various courts have noted that the symptoms of
18   fibromyalgia "are entirely subjective. There are no laboratory tests for its presence or severity.
19   The principal symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness, and -- the only
20   symptom that discriminates between it and other diseases of rheumatic character -- multiple
21   tender spots, more precisely <u>18 fixed locations on the body (and the rule of thumb is that the
22   patient must have at least 11 of them to be diagnosed as having fibromyalgia</u>) that when pressed
23   firmly cause the patient to flinch." Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996) (emphasis
24   added); see also Rollins v. Massanari, 261 F.3d 853 (9th Cir. 2001).

25   According to the record, plaintiff exhibited signs of fibromyalgia. She reported pain all over,
26   swelling, fatigue, and disturbed sleep, and was found to have multiple trigger points at the
27
28

appropriate sites for fibromyalgia.[4] [See, e.g., AR at 131, 137, 138, 152, 161.] Plaintiff's progress notes reveal that she has had decreased energy and pain since at least 1999, and it appears she has sought treatment on a regular basis. [AR at 184, 189.] On examination, the tender points of fibromyalgia were present. Indeed, Dr. David Finger of the rheumatology clinic at Tripler Army Medical Center diagnosed plaintiff on December 6, 2001, with fibromyalgia syndrome, "manifested by chronic fatigue, sleep disturbance, diffuse musculoskeletal pain, (+) tender points on exam, headaches, irritable bowels, paresthesias, cognitive complaints (memory, concentration) and mood disturbance (anxiety)." [AR at 199.] Further, the Court finds no indication in the record that any physician has contradicted the diagnosis of fibromyalgia. See, e.g., Embrey v. Bowen, 849 F.2d 418, 421-23 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim.").

The ALJ's next reason to reject Dr. Campbell's opinions -- that he did not give a function-by-function assessment of plaintiff's physical limitations -- does not diminish the assessments he did provide. Dr. Campbell concluded, based on two years of meeting with, observing, and treating plaintiff, that she would have difficulty completing normal activities of daily living, is forgetful at times, has days when it is difficult to even get out of bed, and that her condition has stayed the same or even worsened over time. Defendant provides no authority for relying on this ground as a legitimate reason to reject the opinions that a treating physician did provide. Finally, that plaintiff reported improvement in her symptoms on a single date [AR at 163] is not a legitimate reason when viewed in context. The statement that she had an improvement in symptoms follows directly on the heels of her report that just days earlier she had bilateral back pain and nausea with chills

---

    [4] Trigger points are "particular spot[s] on the body on which pressure or other stimulus will give rise to specific sensations or symptoms." Dorland's Medical Dictionary, p. 1422 (29th ed. 2000). In defining fibrositis, trigger points are described in Stedman's Medical Dictionary (27th ed. 2000) as "tender foci." The terms "trigger points" and "tender points" appear to be used interchangeably in describing fibromyalgia. Compare Rollins, 261 F.3d at 855, with Soto v. Barnhart, 242 F.Supp.2d 251 (W.D.N.Y. 2003).

(it appears to be these symptoms that improved), and that she still had chronic fatigue syndrome symptoms, including being very run down, tired, forgetful, and exhausted. Id. Further, even if plaintiff had a good day in October, 2000, this is wholly consistent with Dr. Campbell's opinion that she can have days of normal functioning, and days where it is difficult to get out of bed. The ALJ cannot pick and choose from the evidence in order to support his conclusion.[5]

Neither does the ALJ in rejecting Dr. Campbell's opinion account for his subjective assessment of plaintiff's condition. "The subjective judgments of treating physicians are important, and properly play a part in . . . medical evaluations. Accordingly, the ultimate conclusions of these physicians must be given substantial weight." Embrey, 849 F.2d at 422. This makes sense as "treating physicians . . . bring a 'unique perspective to the medical evidence'. . . . The treating physician's continuing relationship with [plaintiff] makes him especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment." Lester, 81 F.3d at 833, citing 20 C.F.R. § 404.1527(d)(2). This is especially true where the treating professional reached his conclusion based at least in part on observations of plaintiff during many months of treatment sessions; Dr. Sabourin, an orthopedist who appears to have focused on plaintiff's orthopedic issues and not on fibromyalgia, had only one such session with plaintiff; the state agency physician had none. As the ALJ's reasons to reject Dr. Campbell's opinions were not specific and legitimate, remand on this issue is warranted.

The Court finds, however, that some of the reasons given to reject the opinions of Dr. Freyne were specific and legitimate. Plaintiff concedes that Dr. Freyne's notes are limited to one "follow-up" record from October 18, 2004 [Joint Stip. at 17; AR at 373], in which she notes that plaintiff is feeling "ok," had 16 of 18 trigger points and was to continue exercise and medications. Id. Although the greatest weight is accorded to the treating physician because "he is employed

---

[5] That plaintiff's rheumatoid arthritis work-up may have been negative and radiology exams were unremarkable is not contrary to a finding of fibromyalgia. See Sarchet, 78 F.3d at 306 (supra).

to cure and has a greater opportunity to know and observe the patient as an individual," Sprague, 812 F.2d at 1230, the ALJ is not bound by the opinion of a treating physician that is "brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion." Magallanes, 881 F.2d at 751 (quoting Young v. Heckler, 803 F.2d 963, 968 (9th Cir. 1986)). Further, despite Dr. Freyne's indication that she first treated plaintiff in January, 2004 [AR at 383], there is no evidence of such treatment, and she gives absolutely no basis for her conclusion that plaintiff was disabled starting in 1998. [AR at 391.] This is a valid reason to reject her opinion.[6]

Neither did the ALJ err in concluding that there are no records from Dr. Freyne to refute Dr. Brodkin's opinion that plaintiff's pain was well controlled in July, 2003. The record reflects that it was [AR at 363], and that plaintiff's fibromyalgia was well controlled on a consistent basis after that time as well. [AR at 312, 318, 331.] Further, plaintiff's request for a referral to a specialist does not necessarily mean that her condition was not under control, as plaintiff asserts. It could also mean that she wanted an expert to determine if it could be better controlled, or if a cure was available. Any inconsistencies in this regard were for the ALJ to resolve. Andrews, 53 F.3d at 1041. Remand is not warranted as to Dr. Freyne's opinions.[7]

In any event, Dr. Freyne's records do not relate to a period of time prior to plaintiff's date last insured, and as there is no basis in the record for her opinions as to an earlier time frame, these records have no role in determining plaintiff's eligibility for Disability Insurance Benefits.[8]

---

[6] The Court does not find that the ALJ failed in his duty to recontact Dr. Freyne to resolve alleged inconsistencies in her opinions. Indeed, the ALJ attempted to obtain detailed information from her by sending a series of interrogatories in which he sought the detailed basis for certain responses in her residual functional capacity questionnaire. Dr. Freyne's less-than-detailed, sketchy responses do not obligate the ALJ to try again.

[7] One reason given by the ALJ -- the inconsistent number of tender points -- is unavailing. Whether plaintiff had 14, 16, or 18 trigger points on any given date may simply reflect varying tenderness or flair-ups. None of the numbers would reflect the absence of fibromyalgia.

[8] As the Court's resolution of the issue of the treating physicians' opinions may, on remand, impact on the other claims raised by plaintiff in the Joint Stipulation, the Court will not address those other issues herein.

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to determine if specific and legitimate reasons exist to disregard the opinions of Dr. Campbell, and if not, what impact they have on the ALJ's finding that plaintiff is not disabled. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: September 28, 2006

/S/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE